IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MIKE YELLEN, PAUL CHILSON, and CAROLE CHILSON,<br><br>        Plaintiffs,<br><br>    vs.<br><br>GLENN HARA, JOHN S. CARROLL, MERRILL LYNCH, PETER K. KUBOTA, MICHELLE OISHI, M. KANANI LAUBACH, and STATE OF HAWAII,<br><br>        Defendants.<br>_____ | CIVIL NO. 15-00300 JMS-KSC<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER |

## ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

### I. INTRODUCTION

Before the court is *pro se* Plaintiffs Mike Yellen, Paul Chilson, and Carole Chilson's (collectively, "Plaintiffs") Motion for an Expedited Temporary Restraining Order and Permanent Injunction ("Motion for TRO"), filed on August 11, 2015. Doc. No. 11. Plaintiffs' Motion for TRO seeks the following relief:

> 1. [T]o enjoin Defendant Hara and Oishi from taking any money from Plaintiff Paul and Carole's (sic) Chilson's bank accounts; to enjoin Defendant Lacbach (sic) from acting in her conspiratorial matter (sic) to not protect Plaintiff Carole Chilson's constitutional rights, in

>filing her motion to dismiss or withdrawal of Plaintiff
>Carole Chilson's motion to vacate Defendant Hara's
>illegal court orders.  To also stop the retaliatory actions
>by Defendants against Plaintiff Yellen.
>
>2.  [T]o enjoin Defendant Merrill Lynch from placing
>any restriction on access to the trust account held in
>Merrill Lynch.

Doc. No. 11, Mot. at 2.

The court has reviewed (1) the Motion, and Exhibits A to G attached to the Motion; (2) the Complaint filed on August 4, 2015; and (3) the publicly-available docket in *In the Matter of the Conservatorship and Guardianship of Carole June Chilson*, No. 3CG 14-1-001 (Haw. Third Cir. Ct. filed Apr. 8, 2014) ("*In re Carole June Chilson*"), pending in the Circuit Court of the Third Circuit of the State of Hawaii.  Based on the following, the Motion for TRO is DENIED.

## II.  **BACKGROUND**

Plaintiffs' Complaint alleges federal jurisdiction based on, among other provisions, violations of civil rights under 42 U.S.C. §§ 1983, 1985, 1986 & 1988.  Doc. No. 1, Compl. at 1.  The court construes the Complaint liberally in favor of the *pro se* Plaintiffs.  *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  So construed, Plaintiffs are alleging violations of due process based on actions of several officials of the Third Circuit Court of the State of Hawaii taken

in a pending state court case, *In re Carole June Chilson*, and others acting in concert with that pending action. The Complaint alleges that

> • Defendant Glenn Hara ("Hara") is a state Circuit Court Judge in Hilo, Hawaii who is "presiding over Plaintiff Yellen's civil rights complaint and Plaintiff Paul Chilson and Carole Chilson's guardianship/conservatorship case." Doc. No. 1, Compl. ¶ 5.
>
> • Defendant John S. Carroll ("Carroll") was "Plaintiff Paul Chilson's attorney with regards to . . . filing for guardianship for Plaintiff Paul Chilson over Carole Chilson." *Id.* ¶ 6. Elsewhere, Plaintiffs appear to allege that Hara wrongfully appointed Carroll as guardian ad litem for Plaintiff Carole Chilson. *Id.* ¶ 27.
>
> • Defendant Peter K. Kubota ("Kubota") "was appointed by Defendant Hara as a Kokua Kanawai . . . to serve[] as an extension of the court to conduct an independent review of the situation, to interview the respondent and the person seeking to be appointed conservator or guardian, and to report its findings and recommendations to the court." *Id.* ¶ 7.[1]
>
> • Defendant Michelle Oishi ("Oishi) "was appointed by Defendant Hara as a conservator over Carole Chilson['s] accounts and trust." *Id.* ¶ 8.

---

[1] The Hawaii Probate Code defines a "Kokua Kanawai" (Helper in the Law) as "an individual appointed by a court who has the role and authority granted under Rule 113 of the Hawaii probate rules." Haw. Rev. Stat. ("HRS") § 560:5-102. In turn, Rule 113 provides in part:

> In conservatorship proceedings, the Kokua Kanawai's duties shall include those items listed in Hawai'i Revised Statutes Section 560:5-406(c) and (d); in guardianship proceedings the duties shall include those items listed in Hawai'i Revised Statutes Section 560:5-305(c) and (d). The Kokua Kanawai shall have access to all medical and psychological records of the respondent without further court order, but shall not reveal confidential information to others.

- Defendant M. Kanani Laubach ("Laubach") "was appointed by Defendant Hara as a guardian ad litem for Carole Chilson." *Id.* ¶ 9.

- Defendant Merrill Lynch "is a Corporate Financial Company in which Plaintiff Paul and Carole Chilson has an account and money with." *Id.* ¶ 10.

- Defendant State of Hawaii "must ensure that all judges in the State of Hawaii are properly trained, in which they do not deliberately violate[] the rights of the individuals living in the State of Hawaii[.]" *Id.* ¶ 11.

The Complaint describes particular proceedings in the state court conservatorship proceedings. It alleges that Carroll "filed for conservatorship when Plaintiff was just asking for guardianship," *id*. ¶ 14, and claims that he "was acting in a conspiratorial act with Defendant Hara and Kubota to take control over Plaintiffs Paul and Carole Chilson['s] bank accounts." *Id*. It claims that Carroll "was responsible to ensure that Plaintiff Carole Chilson was served with the petition for guardianship/conservatorship, [and] that failing to do so violated [her] constitutional rights to due process, the right to be heard and the right to be represented at any and all hearings held in which Plaintiff Carole Chilson's money is [to] be taken." *Id.*

As for Hara, Plaintiffs allege that Hara violated Carole Chilson's rights by conducting a May 7, 2014 hearing without proper notice to her, and "illegal[ly] appointed attorneys in the attempt to [draw] all the money out of

Plaintiffs Paul and Carole Chilson['s] bank account and trust." *Id.* ¶ 22. Plaintiffs refer to the appointments of Kubota, Oishi, and Laubach. *Id.* ¶¶ 22-24, claiming that Hara "has done nothing more than pray (sic) on the elderly." *Id.* ¶ 25. They also allege that Hara and Carroll are conspiring to violate Carole Chilson's rights, pointing to Hara's act of appointing Carroll as guardian ad litem for her even though Paul Chilson had a disciplinary action pending against Carroll. *Id.* ¶ 27. (Plaintiff Yellen had filed a motion to be appointed as her guardian ad litem, but the motion was denied. *Id.* ¶ 28.)[2]

As for Kubota, Plaintiffs allege that he wrongfully performed duties as Kokua Kanawai by not interviewing Paul Chilson, preaching to Carole Chilson, and conspiring with Merrill Lynch to be the successor trustee. *Id.* ¶ 34. They complain of his "conspiratorial action with Defendants Hara, Carroll, Oishi and Laubach." *Id.*

As for Oishi, the Complaint alleges that, after his "illegal appointment" as conservator, Oishi "illegally took control over [Carole Chilson's] bank account" and "Paul and Carole Chilson['s] trust account." *Id.* ¶ 35. It alleges that she conspired with Hara, Carroll, Kubota, and Laubach to violate

---

[2] It is unclear what specific rights of Yellen (as opposed to Carole or Paul Chilson) are being violated.

Carole Chilson's constitutional rights. *Id.* ¶ 36.

Similarly, the Complaint alleges that Laubach was wrongfully appointed as guardian ad litem as part of a conspiracy "to have Defendant Laubach withdraw Plaintiff Carole Chilson's motion to vacate Defendant Hara's illegal order appointing Defendant Oishi as conservator and to have the case [dismissed]." *Id.* ¶ 37. It alleges that Laubach was part of the same conspiracy with Hara, Carroll, Kubota, and Oishi. *Id.*

As to Merrill Lynch, the Complaint alleges that Merrill Lynch, as trustee of an account "in Plaintiff Paul Chilson's name," is acting illegally by freezing access "supposedly based on a court order." *Id.* ¶ 39. It alleges that the order is "illegal as the court never had jurisdiction," *id.*, and that Merrill Lynch did "not check into if the courts had jurisdiction over Plaintiff Carole Chilson before taking any adverse action over a personal account." *Id.* ¶ 40. It further alleges that Merrill Lynch should have known its actions were in violation of the Constitution, and that it was part of the same conspiracy with Hara, Carroll, Kubota, Laubach, and Oishi. *Id.* ¶ 42.

Finally, apparently attempting to stop the actions of Hara, the Complaint alleges that "Plaintiff Yellen filed a writ of mandate with the Hawaii Supreme Court . . . alon[g] with other motions, but the Hawaii Supreme Court has

failed to take any corrective measures in Defendant Hara's unconstitutional conduct." *Id.* ¶ 29.

Among other relief, the Complaint seeks injunctive and declaratory relief (1) to enjoin Defendants from continuing to violate Plaintiffs' Constitutional rights; and (2) to require Hara to "immediately dismiss the case[] before him, [*In re Carole June Chilson*]." *Id.* at 15-16. It also seeks compensatory damages of $5 million from each Defendant, punitive damages in the same amount, as well as attorney's fees and costs. *Id*. at 16.

On August 11, 2015, Plaintiffs filed their Motion for TRO, seeking the relief as set forth above in the Introduction. The Motion for TRO repeats many of the allegations of the Complaint, and describes the same alleged conspiracy to violate Plaintiffs' Constitutional rights. Pursuant to Local Rule 7.2(d), the court finds the Motion for TRO suitable for disposition without an oral hearing.

### III. <u>STANDARD OF REVIEW</u>

A court may issue a TRO without written or oral notice to the adverse party only if the party requesting the relief provides an affidavit or verified complaint providing specific facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse

party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). In addition, the movant or his attorney must certify in writing "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Even if such notice is provided, a TRO may issue only if Plaintiffs meet their burden under well-established factors. The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See, e.g.*, *Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw. 1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

A "preliminary injunction is an extraordinary and drastic remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). A "plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *accord Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as

the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). *Winter* emphasizes that plaintiffs seeking preliminary relief must demonstrate that "irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

## IV.  **DISCUSSION**

Plaintiffs fail to meet the requirements for granting a TRO without notice. First, Plaintiffs have not demonstrated compliance with the requirements of Federal Rules of Civil Procedure 65(b)(1)(A) & (B). As to the first requirement, Plaintiffs did not provide any specific *facts* establishing that "immediate and irreparable injury, loss, or damage will result" to Plaintiffs. No declaration or affidavit attesting to the facts alleged in the Complaint was filed, and the Complaint was not verified. *See* Fed. R. Civ. P. 65(b)(1)(A) (requiring "specific facts in an affidavit or a verified complaint"). As to the second requirement, Plaintiffs states only that the Motion for TRO was mailed to each Defendant on August 10, 2015. Doc. No. 11, Mot. at 13. They have not "certifie[d] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

9

More importantly, even if all Defendants have had sufficient notice, Plaintiffs' Motion for TRO fails to establish all the *Winter* standards. At minimum, Plaintiffs fall well short of establishing that they are likely to succeed on the merits. Plaintiffs have therefore failed to carry their burden on their Motion for TRO.

All of the relief sought in their Motion for TRO challenges state court rulings or actions taken by court officials, or those acting in concert with those officials, in the *In re Carole June Chilson* conservatorship proceeding.

Initially, given such allegations, it is clear that most (if not all) of the Defendants (*e.g.*, a state judge, and individuals appointed to perform judicial functions) are entitled to immunity from damages under § 1983. *See, e.g., Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) ("Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities."). This immunity extends "even when such acts are in excess of their jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). *See, e.g., Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir. 2006) (reasoning that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority") (quoting *Stump*, 436 U.S. at 356); *Franceschi v. Schwartz*, 57 F.3d 828, 830-31

(9th Cir. 1995) (holding that a court commissioner was entitled to judicial immunity from damages liability for claims arising out of official acts or the performance of judge-like functions).[3]

And although *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984), held that absolute judicial immunity does *not* extend to actions under § 1983 seeking prospective injunctive relief against state judges on account of their judicial acts, Congress responded to *Pulliam* in 1996 by amending § 1983 to abrogate its holding. Specifically, § 1983 now provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.* For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(Emphasis added to highlight the amendment added in the Federal Courts

---

[3] Claims for damages against the State of Hawaii are barred by Eleventh Amendment immunity. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847). *See, e.g.*, *Haas v. Wisconsin*, 109 F. App'x 107, 114 (7th Cir. 2004) ("This amendment was intended to overrule the Supreme Court's decision in [*Pulliam*]."); *Agbannaoag v. Honorable Judges of Circuit Court of First Circuit of Haw.*, 2013 WL 5325053, at *3 (D. Haw. Sept. 20, 2013) ("*Pulliam* has been abrogated on this issue and judicial immunity may now bar § 1983 claims for equitable relief."). That is, under the plain language of § 1983, courts lack authority to grant the injunctive relief sought in the Motion for TRO. *See, e.g.*, *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006) ("42 U.S.C. § 1983, as amended in 1996 by the Federal Courts Improvement Act, explicitly immunizes judicial officers against suits for injunctive relief.").

Moreover, Plaintiffs' Complaint does not allege that "a declaratory decree was violated or that declaratory relief was unavailable." In any event, "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *Agbannaoag*, 2013 WL 5325053, at *3 (quoting *La Scalia v. Driscoll*, 2012 WL 1041456, at *7 (E.D.N.Y. Mar. 26, 2012)).

In this regard, limited and non-binding authority indicates that *Pulliam* might still apply for actions seeking "prospective declaratory relief." *See*

*Esensoy v. McMillan*, 2007 WL 257342, at *1 n.5 (reasoning that, although Congress abrogated *Pulliam*, "judicial immunity protects the Defendants only from Appellant's request for injunctive relief. But § 1983 does not explicitly bar Appellant's request for declarative relief"); *Ray v. Judicial Corrs. Servs., Inc.*, 2014 WL 5090723, at *4 (N.D. Ala. Oct. 9, 2014) ("Notwithstanding § 1983's clarity regarding injunctive relief, that statute fails to address the availability of prospective declaratory relief to defeat judicial immunity.").

Nevertheless, even if "prospective declaratory relief" was still available under *Pulliam*, the court would not likely grant it in this case. In recognizing that equitable relief against a state judicial officer could be necessary to protect a petitioner's constitutional rights, *Pulliam* acknowledged some "risk that judges will be harassed and their independence compromised by the threat of having to defend themselves against suits by disgruntled litigants." 466 U.S. at 538-39. *Pulliam* reasoned, however, that "[t]he limitations already imposed by the requirements for obtaining equitable relief against any defendant -- a showing of an inadequate remedy at law and of a serious risk of irreparable harm severely curtail" that risk. *Id*. at 537 (internal citation omitted). It observed that "[s]imilar limitations serve to prevent harassment of judges through the use of writs of mandamus" because such writs are "reserved for really extraordinary causes." *Id.*

at 538 (quoting *Ex parte Fahey*, 332 U.S. 258, 260 (1947)).  Finally, *Pulliam* reasoned that the concern that federal judges "should not sit in constant supervision of the actions of state judicial officers . . . has been addressed as a matter of comity and federalism[.]" *Id*. at 539.  It therefore "reaffirm[ed] the validity of those principles and the need for restraint by federal courts called on to enjoin the actions of state judicial officers." *Id.*  In short, any "prospective declaratory relief" would be limited to "extraordinary" circumstances.

        Here, to obtain any equitable relief (such as a TRO seeking declaratory relief), Plaintiffs must show "that [they have] an inadequate remedy at law and a serious risk of irreparable harm." *Id.* at 537.  But Plaintiffs have a right of appeal.  *See, e.g.*, *Affeldt v. Carr*, 628 F. Supp. 1097, 1103 (N.D. Ohio 1985) (declining to grant injunctive relief, reasoning that plaintiff had an adequate remedy at law by appeal).  More importantly, Plaintiffs' allegations establish only that they are dissatisfied with the performance of appointed court officials and/or the results of ongoing conservatorship proceedings.  And it is unclear whether they even have a viable claim for a deprivation of constitutional rights -- although Plaintiffs appear to allege that Defendants have "conspired" to deprive them (or at least Paul and Carole Chilson) of money from a trust, a court order limiting Merrill Lynch from dispersing funds would seem to be a legal and proper consequence of

a conservatorship proceeding.  *See, e.g.*, HRS § 560:5-425 (detailing the powers of a conservator, including collecting, holding, and retaining assets, and acquiring or disposing of an asset of the estate).  Even if an error was made, it would not constitute an "extraordinary" circumstance to justify interference with an ongoing state court proceeding, especially at this TRO stage.

In short, Plaintiffs have not demonstrated any likelihood of success on the merits of their claims seeking to enjoin state court proceedings, or to void the state court orders.  And because Plaintiffs have not demonstrated that they are likely to succeed, they necessarily cannot obtain a TRO -- *Winter* requires all four elements (likelihood of success, likelihood of irreparable harm, a favorable balance of equities, and demonstrating that an *injunction* is in the public interest).  *Winter*, 555 U.S. at 20.

///

///

///

///

///

///

///

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order, Doc. No. 11, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 13, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Yellen et al. v. Hara et al.*, Civ. No. 15-00300 JMS-KSC, Order Denying Motion for Temporary Restraining Order