IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MIKE YELLEN, PAUL CHILSON, and CAROLE CHILSON,<br><br>Plaintiffs,<br><br>vs.<br><br>GLENN HARA, JOHN S. CARROLL, MERRILL LYNCH, PETER K. KUBOTA, MICHELLE OISHI, M. KANANI LAUBACH, and the STATE OF HAWAII,<br><br>Defendants. | CIVIL NO. 15-00300 JMS-KSC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS |

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

## I. INTRODUCTION

Plaintiffs Mike Yellen, Paul Chilson, and Carole Chilson

(collectively, "Plaintiffs"), proceeding pro se, filed this suit asserting federal civil

rights violations based on an ongoing state court guardianship/conservatorship

proceeding.  Plaintiffs seek injunctive relief to halt or reverse decisions made in

that state court proceeding, as well as damages, against (1) Hawaii State Circuit

Judge Glenn Hara ("Hara"); (2) three private attorneys -- Peter K. Kubota

("Kubota"), Michelle Oishi ("Oishi"), and M. Kanani Laubach ("Laubach") -- who

were appointed by the state court to perform court-related functions; (3) a private attorney, John Carroll ("Carroll"), who apparently was both a court-appointed temporary guardian ad litem, and also represented one of the Plaintiffs; (4) a private financial services company, Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"); and (5) the State of Hawaii (the "State").

Two Motions to Dismiss, along with a substantive joinder, are pending before the court.  First, Defendants Hara, Kubota, Oishi, Laubach, and the State (collectively, the "State Defendants") move to dismiss the August 4, 2015 Complaint against each of them.  Doc. No. 21.  Second, Defendant Carroll moves to dismiss the Complaint as to himself.  Doc. No. 28.  And Defendant Merrill Lynch joins in Carroll's motion only "to the extent that it seeks dismissal of any claims asserted against Merrill Lynch."  Doc. No. 36.[1]

The Motions seek dismissal on various grounds for failure to state a claim or for lack of jurisdiction, and indeed many aspects of the Complaint are obviously and plainly subject to dismissal.  Federal courts generally do not interfere with ongoing state court proceedings, judicial officers have immunity from suit for performance of judicial functions, and private actors usually cannot be liable for constitutional violations.  Defendants have thus, in fairly perfunctory

---

[1] The court construes this joinder as a "substantive joinder" under Local Rule 7.9.

fashion, sought dismissal of the entire Complaint based on those general principles.  And as set forth below, the court GRANTS the Motions in part and DISMISSES claims that are clearly without basis.

Upon close review, however, the Motions raise two questions without such clear-cut answers, at least on the current record -- (1) whether the court-appointed private officials (Kubota, Oishi, and Laubach) are entitled to *absolute* quasi-judicial immunity (as opposed to possible qualified immunity) for performing discretionary court functions; and (2) whether constitutional claims against them otherwise fail for lack of "state action."  Answering these two questions requires further consideration (and the written arguments have not fully addressed them) both as to the precise legal standards, and as to the application of those standards to the factual record.  Addressing these specific questions is more appropriate for a motion for summary judgment under Federal Rule of Civil Procedure 56, rather than under the standards of a motion to dismiss. Accordingly, as to individual capacity claims against these Defendants (Kubota, Oishi, and Laubach), the Motion is DENIED without prejudice to the questions being raised in a motion for summary judgment on more complete briefing.

In short, the Motions are GRANTED in part and DENIED in part.

3

## II. <u>BACKGROUND</u>

**A.    Factual Background**

Plaintiffs allege federal jurisdiction based on violations of their civil rights.  Doc. No. 1, Compl. at 1.  The court construes the Complaint liberally in favor of the pro se Plaintiffs.  *See, e.g.*, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).  So construed, Plaintiffs are alleging violations of the First and Fourteenth Amendments to the U.S. Constitution based on actions of (1) a judge of the Third Circuit Court of the State of Hawaii taken in a pending state court conservatorship/guardianship case, *In re Carole June Chilson*, CG No. 14-1-001; (2) three attorneys appointed by that judge in that case to fulfill various roles; and (3) others allegedly acting in concert with those persons in that pending action. They also contend that all Defendants are illegally conspiring to deprive them of property without due process of law.

Specifically, the Complaint alleges that:

• "Plaintiffs[] Carole Chilson by and through Plaintiff Paul Chilson . . . presently have a guardianship/conservatorship with the Circuit Court, in the County of Hilo, in which Defendant Hara is the presiding judge.  Plaintiff Carole Chilson is presently declared as an incompetent person [and] Plaintiff Paul Chilson is her court appointed guardian."  Doc. No. 1, Compl. ¶ 4.

• Hara is a state Circuit Court Judge in Hilo, Hawaii who is "presiding over Plaintiff Yellen's civil rights complaint and Plaintiff

4

Paul Chilson's and Carole Chilson's guardianship/conservatorship case."  *Id.* ¶ 5.

• Carroll was "Plaintiff Paul Chilson's attorney with regards to . . . filing for guardianship for Plaintiff Paul Chilson over Carole Chilson."  *Id.* ¶ 6.  Plaintiffs allege that Hara wrongfully appointed Carroll as guardian ad litem for Plaintiff Carole Chilson.  *Id.* ¶ 27.  (The record indicates that Carroll had been appointed on December 10, 2014 as a "temporary guardian ad litem" until January 13, 2015, when he was replaced by Laubach.  Doc. No. 46-4, State Def.'s Ex. C.)

• Kubota "was appointed by Defendant Hara as a Kokua Kanawai . . . to serve[] as an extension of the court to conduct an independent review of the situation, to interview the respondent and the person seeking to be appointed conservator or guardian, and to report its findings and recommendations to the court."  *Id.* ¶ 7.[2]

• "Kubota as Kokua Kanawai was not permitted to preach religious matter to Plaintiff Carole Chilson in violations of the First Amendment to the United States Constitution and furthermore, was required to not violate Plaintiff Paul Chilson constitutional rights.  As such, [he] has acted in a conspiratorial matter to violate Plaintiff Paul and Carole Chilson's constitutional rights."  *Id.*

• Oishi "was appointed by Defendant Hara as a conservator over Carole Chilson['s] accounts and trust."  *Id.* ¶ 8.

• Laubach "was appointed by Defendant Hara as a guardian ad litem for Carole Chilson."  *Id.* ¶ 9.

---

[2]  The Hawaii Probate Code defines a "Kokua Kanawai" (Helper in the Law) as "an individual appointed by a court who has the role and authority granted under Rule 113 of the Hawaii probate rules."  Haw. Rev. Stat. ("HRS") § 560:5-102.  In turn, Rule 113 provides in part that "[i]n conservatorship proceedings, the Kokua Kanawai's duties shall include those items listed in Hawai'i Revised Statutes Section 560:5-406(c) and (d); in guardianship proceedings the duties shall include those items listed in Hawai'i Revised Statutes Section 560:5-305(c) and (d)."

• Merrill Lynch "is a Corporate Financial Company in which Plaintiff Paul and Carole Chilson has [sic] an account and money with." *Id.* ¶ 10.

• The State "must ensure that all judges in the State of Hawaii are properly trained, in which they do not deliberately violate[] the rights of the individuals living in the State of Hawaii[.]" *Id.* ¶ 11.

The Complaint describes the particular proceedings in the state court guardianship/conservatorship proceedings, and contains more specific allegations against each Defendant. It alleges that Carroll "filed for conservatorship when Plaintiff was just asking for guardianship," *id.* ¶ 14, and claims that he "was acting in a conspiratorial act with Defendant Hara and Kubota to take control over Plaintiffs Paul and Carole Chilson['s] bank accounts." *Id.* It claims that Carroll "was responsible to ensure that Plaintiff Carole Chilson was served with the petition for guardianship/conservatorship, [and] that failing to do so violated [her] constitutional rights to due process, the right to be heard and the right to be represented at any and all hearings held in which Plaintiff Carole Chilson's money is [to] be taken." *Id.* The Complaint notes that "Defendant Carroll is before the [Office of Disciplinary Counsel] on allegation[s] of over charging, forging documents, and false billing statements." *Id.* at 9 n.1.

As for Hara, Plaintiffs allege that Hara violated Carole Chilson's rights by conducting a May 7, 2014 hearing without proper notice to her, and

"illegal[ly] appointed attorneys in the attempt to [draw] all the money out of Plaintiffs Paul and Carole Chilson['s] bank account and trust." *Id.* ¶ 22.  Plaintiffs refer to the appointments of Kubota, Oishi, and Laubach, *id.* ¶¶ 22-24, claiming that Hara "has done nothing more than [prey] on the elderly." *Id.* ¶ 25.  Plaintiffs also allege that Hara and Carroll are conspiring to violate Carole Chilson's rights, pointing to Hara's act of appointing Carroll as guardian ad litem for her even though Paul Chilson had a disciplinary action pending against Carroll. *Id.* ¶ 27. (Plaintiff Yellen had filed a motion to be appointed as her guardian ad litem, but the motion was denied. *Id.* ¶ 28.)[3]

As for Kubota, Plaintiffs allege that he wrongfully performed duties as Kokua Kanawai by not interviewing Paul Chilson, preaching to Carole Chilson, and conspiring with Merrill Lynch to be the successor trustee. *Id.* ¶ 34.  They allege that "what Defendant Kubota did was preach to Plaintiff Carole Chilson and also informing her about donating money to charity . . . in direct violation of the First Amendment to the United States Constitution, in that Defendant Kubota was

---

[3]  It is unclear what specific rights of Yellen (as opposed to Carole or Paul Chilson) are being violated.  Although the details are not clear, the Complaint alleges that "Defendant Hara has taken retaliatory action against Plaintiff Yellen, through illegal[ly] denying Plaintiff Yellen's motion to amend a civil rights complaint in a separate case; continually accusing Plaintiff of unlawful acts, during hearings that Plaintiff is not a part of and when Plaintiff Yellen request[s] to make an appearance to be heard and defend, Defendant Hara denies such request."  Doc. No. 1, Compl. ¶ 30.  The court construes such allegations as due process violations under the Fourteenth Amendment.

not authorized to preach to Plaintiff Carole Chilson as a Kokua Kanawai nor was Plaintiff Carole Chilson wanting Defendant Kubota to preach to her. . . . Defendant Kubota['s] desire to push his religious upon Plaintiff Carol Chilson is in direct violation of the First Amendment to the United States Constitution. *Id.* ¶ 32. Plaintiffs complain of his "conspiratorial action with Defendants Hara, Carroll, Oishi and Laubach." *Id.* ¶ 34.

As for Oishi, the Complaint alleges that, after her "illegal appointment" as conservator, Oishi "illegally took control over [Carole Chilson's] bank account" and "Paul and Carole Chilson['s] trust account." *Id.* ¶ 35. It alleges that she conspired with Hara, Carroll, Kubota, and Laubach to violate Carole Chilson's constitutional rights. *Id*. ¶ 36. "The whole intent to appoint Defendant Oishi was to illegally take over all of Plaintiff Paul and Carole Chilson's bank and trust accounts . . . in direct violation of the United States Constitution, pursuant to the Fourteenth Amendment as Plaintiff Carole Chilson was never provided a hearing to inform her that Defendant Oishi was taking over her bank and trust accounts." *Id.* ¶ 35.

Similarly, the Complaint alleges that Laubach was wrongfully appointed as guardian ad litem as part of a conspiracy "to have Defendant Laubach withdraw Plaintiff Carole Chilson's motion to vacate Defendant Hara's illegal

order appointing Defendant Oishi as conservator and to have the case [dismissed]." *Id.* ¶ 37.  It alleges that "Laubach has said she was going to move the court to withdraw Plaintiff Carole Chilson's motion.  This . . . violates Plaintiffs Paul and Carole Chilson's constitutional rights, as Plaintiff Carole Chilson was never served with the petition for guardianship, in direct violations of Plaintiff Carole Chilson's due process rights." *Id.*  It contends that Laubach was part of the same conspiracy with Hara, Carroll, Kubota, and Oishi.  *Id.*

As to Merrill Lynch, the Complaint alleges that Merrill Lynch, as trustee of an account "in Plaintiff Paul Chilson's name," is acting illegally by freezing access "supposedly based on a court order." *Id.* ¶ 39.  It alleges that the order is "illegal as the court never had jurisdiction," *id.*, and that Merrill Lynch did "not check into if the courts had jurisdiction over Plaintiff Carole Chilson before taking any adverse action over a personal account." *Id.* ¶ 40.  It further contends that Merrill Lynch should have known its actions were in violation of the Constitution, and that it was part of the same conspiracy with Hara, Carroll, Kubota, Laubach, and Oishi.  *Id.* ¶ 42.

Finally, the Complaint alleges that "Plaintiff Yellen filed a writ of mandate with the Hawaii Supreme Court . . . alon[g] with other motions, but the Hawaii Supreme Court has failed to take any corrective measures in Defendant

Hara's unconstitutional conduct." *Id.* ¶ 29.

The Complaint seeks injunctive and declaratory relief (1) to enjoin Defendants from continuing to violate Plaintiffs' Constitutional rights; and (2) to require Hara to "immediately dismiss the case[] before him, [*In re Carole June Chilson*]." *Id.* at 15-16.  It also seeks compensatory damages of $5 million from each Defendant, punitive damages in the same amount, as well as attorney's fees and costs.  *Id*. at 16.

## B.    Procedural Background

Plaintiffs filed suit on August 4, 2015.  Doc. No. 1.  On August 11, 2015, they filed a Motion for Temporary Restraining Order ("TRO"), Doc. No. 11, which the court denied on August 13, 2015.[4]  Doc. No. 12.  The State Defendants filed their Motion to Dismiss on August 28, 2015, Doc. No. 21, and Carroll filed his Motion to Dismiss on September 3, 2015.  Doc. No. 28.  Merrill Lynch filed its Statement of No Opposition, including a substantive joinder, in Carroll's Motion on September 25, 2015.  Doc. No. 36.  Plaintiffs filed an Opposition to the State Defendants' Motion on September 28, 2015, Doc. No. 37, and the State Defendants filed a Reply on October 5, 2015.  Doc. No. 38.

---

[4]  On October 30, 2015, the court denied Plaintiffs' Motion for Reconsideration of the Order Denying Plaintiffs' Motion for TRO.  Doc. No. 44.

On October 13, 2015, the court determined that the Motions would be decided without an oral hearing under Local Rule 7.2(d).  Doc. No. 39.  On October 30, 2015, the court requested supplemental briefing regarding the functions performed by Kubota, Oishi, and Laubach.  Doc. No. 45.  Accordingly, the State Defendants filed a Supplemental Memorandum on November 6, 2015.  Doc. No. 46.

## III.  <u>STANDARDS OF REVIEW</u>

### A.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Although a plaintiff need not identify the legal theories that are the basis of a pleading, *see Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346, 346 (2014) (per curiam), a plaintiff must nonetheless allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

11

U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

12

**B.      Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks proper subject matter jurisdiction.  The court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) so long as "the jurisdictional issue is [not] inextricable from the merits of a case."  *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).  The moving party "should prevail [on a motion to dismiss] only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060-61 (9th Cir. 2001) (citation and quotation signals omitted); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack such as the case here, the court may dismiss a complaint when its allegations are insufficient to confer subject matter jursidiction.  When the allegations of a complaint are examined to determine whether they are sufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  *Fed'n of African Am.*

13

*Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). In such a facial attack on jurisdiction, the court limits its analysis to the allegations of and the documents attached to the complaint. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## C.    Pro Se Pleadings

Because Plaintiffs are proceeding pro se, the court liberally construes their pleadings. *See Eldridge*, 832 F.2d at 1137 ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1126 (9th Cir. 2000).

## IV.  <u>DISCUSSION</u>

Although the Motions to Dismiss were filed independently and seek dismissal as to different Defendants, in part they raise the same or similar issues. Accordingly, where appropriate, the court considers them together. The court first analyzes issues that apply to both Motions or all Defendants, and then discusses

questions unique to any remaining Defendants.

## A.   *Younger* Abstention Does Not Apply

Both Motions contend that this court should dismiss or abstain under *Younger v. Harris*, 401 U.S. 37 (1971), because related or parallel proceedings are currently pending in state court or before the disciplinary board of the Hawaii Supreme Court.  *See* Doc. No. 21-1, State Defs.' Mot. at 9-10; Doc. No. 28-1, Carroll Mot. at 7-8.  *Younger*, however, does not apply here.

*Younger* "reaffirmed the long-standing principle that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014).  "The Court, citing comity concerns, later extended the *Younger* principle to civil enforcement actions 'akin to' criminal proceedings, and to suits challenging 'the core of the administration of a State's judicial system[.]'" *Id.* (citations omitted).  Subsequently, *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), "found abstention appropriate when (1) there is 'an ongoing state judicial proceeding,' (2) those 'proceedings implicate important state interests,' and (3) there is 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *ReadyLink Healthcare*, 754 F.3d at 758 (quoting *Middlesex Cty.*, 457 U.S. at 432).

15

*ReadyLink Healthcare* acknowledged that Ninth Circuit "post-*Middlesex* decisions have sent mixed signals on whether *Younger* remains limited to criminal cases, quasi-criminal actions, and orders involving the administration of a state's judicial system." *Id.*

*ReadyLink Healthcare*, however, analyzed an intervening Supreme Court Opinion, *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), and concluded that "*Younger* abstention is appropriate *only* when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink*, 754 F.3d at 759 (citing *Sprint*, 134 S. Ct. at 593-94) (emphasis added). "Each element must be satisfied, and the date for determining whether *Younger* applies is the date the federal action is filed[.]" *Id.* (citations and internal quotation marks omitted).

Applied here, although state proceedings are ongoing, they are not "quasi-criminal enforcement actions," nor do they "involve a state's interest in enforcing the orders and judgments of its courts." *Id.*  This action involves routine state-court orders appointing individuals to assist the court -- guardianship, conservatorship, and Kokua Kanawai appointments.  These are not orders that

involve "the process by which a state 'compels compliance with the judgments of its courts.'"  *Id.* (quoting *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 886 (9th Cir. 2011)).  In short, *Younger* does not apply, and provides no basis for dismissal or abstention.

### B.     The *Rooker-Feldman* Doctrine Does Not Apply

Similarly, both Motions invoke the "*Rooker-Feldman*" doctrine[5] under which federal district courts are precluded from reviewing state court judgments in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  *See* Doc. No. 21-1, State Defs.' Mot. at 7-9; Doc. No. 28-1, Carroll Mot. at 5-7.  Generally, under the doctrine "a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claims that the state judgment itself violates the loser's federal rights." *Bennett v. Yoshina*, 140 F.3d 1218, 1223 (9th Cir. 1998) (citation omitted).

---

[5]  The doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Although Plaintiffs appear to be asking this federal court to vacate or reverse state court orders, *Rooker-Feldman* applies to bar federal court review of state court *judgments*. *See, e.g.*, *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court."). Here, there is no state court judgment, and it appears undisputed that the state court guardianship/conservatorship proceeding is still ongoing.

Moreover, *Rooker-Feldman* can apply where the federal plaintiff (1) "complain[s] of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court," *Noel*, 341 F.3d at 1163, or (2) "complain[s] of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id.* But, "on the other hand, [where] a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission *by an adverse party*, *Rooker-Feldman* does not bar jurisdiction." *Id.* (emphasis added).[6] Here, Plaintiffs are

---

[6] "If there is simultaneously pending federal and state court litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances

(continued...)

complaining, at least in significant part, about "allegedly illegal act[s] or omission[s]" by adverse parties. *Id.*

In short, the *Rooker-Feldman* doctrine does not provide a basis to dismiss this action.

## C.   Claims under 42 U.S.C. §§ 1981, 1985 and 1986 Are Dismissed

Plaintiffs have claimed civil rights violations under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.[7]  Doc. No. 1, Compl. ¶ 1.  As explained below, however, the Complaint plainly fails to state a claim for violations of §§ 1981, 1985 and 1986 (and so the only remaining claims are for violations of 42 U.S.C. § 1983).

### 1.   *42 U.S.C. § 1981*

Section 1981 ("Equal rights under the law") provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same

_____

[6](...continued)
may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded under [28 U.S.C.] § 1738.  But in neither of these circumstances does *Rooker-Feldman* bar jurisdiction." *Noel*, 341 F.3d at 1164.

[7]  The Complaint also cites 42 U.S.C. § 1988, but § 1988(a) generally directs that "gaps in federal civil rights acts should be filled by state law, as long as that law is not inconsistent with federal law." *Hardin v. Straub*, 490 U.S. 536 (1998).  And §§ 1988(b) & (c) concern attorney's and expert fees.  That is, "section 1988 does not create federal causes of action for violation of civil rights." *Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) (citation omitted).  Instead, "the section is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights." *Moor v. Alameda Cty.*, 411 U.S. 693, 702 (1973).

right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) (quoting 42 U.S.C. § 1981(a)).  It protects against discrimination in making or enforcing contracts on the basis of race or alienage, but otherwise "[t]he text of § 1981 circumscribes the kinds of protections that may be claimed under its auspices." *Id.* at 738.  "The guarantee that 'all persons' may enjoy the same rights that 'white citizens' enjoy does not protect against discrimination on the basis of gender or religion, disability, age, or political affiliation." *Id.* (internal citations omitted).

But nothing in Plaintiffs' Complaint alleges any wrongful conduct regarding Plaintiffs' race or alienage, much less the making or enforcing of contracts.  Rather, the Complaint alleges violations of due process in an ongoing court proceeding.  The Complaint fails to state a cause of action under § 1981.  This claim is dismissed without prejudice.

### 2. *42 U.S.C. §§ 1985 and 1986*

Section 1985 ("Conspiracy to interfere with civil rights") provides, in pertinent part:

(1) Preventing officer from performing duties

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror

. . . . [I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . . ; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or

cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

"Section 1985 contains discrete substantive clauses." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985). Substantive clauses concern conspiracies to prevent an officer from performing duties, obstruction of justice or to intimidate witnesses or jurors, to deny equal protection of the laws, or to interfere with federal elections. *Id.* Class-based animus (*e.g.*, racial discrimination) is required for such an equal protection conspiracy claim under §§ 1985(2) & (3). *Id.* at 1028 (analyzing *Griffin v. Breckenridge*, 403 U.S. 88 (1971) and *Kush v. Rutledge*, 460 U.S. 719 (1983)). That is, *Griffin* established that the reach of § 1985 is limited to conspiracies based on "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102.

Plaintiffs' Complaint fails to allege any conduct regarding conspiring to (1) prevent any officer from performing official duties, (2) obstruct justice, (3) discriminate based on class, or (4) interfere with elections. Rather, the Complaint alleges a conspiracy to deprive Plaintiffs of due process, which does

22

not fall within § 1985.  *See, e.g.*, *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992) (upholding dismissal of claim under § 1985(3) based on conspiracy to deprive plaintiff of due process); *Parker v. Chicago Housing Auth.*, 730 F. Supp. 115, 121 (N.D. Ill. 1989) ("[I]n enacting Section 1985(3), Congress did not seek to prohibit alleged conspiracies to deny due process; rather, Congress sought to prohibit alleged conspiracies to deny equal protection."); *cf. United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 838 (1983) (holding that § 1985(3) does not "reach conspiracies motivated by economic or commercial animus").  Accordingly, as to any claim for conspiracy under § 1985, the Complaint is DISMISSED without prejudice.

It follows that a claim under 42 U.S.C. § 1986 also fails.  Section 1986 provides in part:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]

But "a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985."  *Trerice v. Pedersen*, 769 F.2d 1398,

23

1403 (9th Cir. 1985) (citing *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir.

1983)).  Thus, given that the Complaint fails to state a claim under § 1985, it also

fails to state a claim under § 1986.  As with the § 1985 claim, the § 1986 claim is

DISMISSED without prejudice.

**D.    Claims Against the State, and Official Capacity Claims for Damages, Are Dismissed under the Eleventh Amendment**

It is also clear that any claims for damages against the State of Hawaii

are barred by Eleventh Amendment immunity.  *See, e.g.*, *Edelman v. Jordan*, 415

U.S. 651, 677 (1974); *Lindsey v. Matayoshi*, 950 F. Supp. 2d 1159, 1165 (D. Haw.

2013) ("Pursuant to the Eleventh Amendment, states cannot be sued in federal

court, whether by their own citizens or citizens of another state.") (citations

omitted).  Moreover, to the extent the Complaint seeks damages against any of the

State Defendants in their official capacities, such claims are also barred by

Eleventh Amendment immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not

a suit against the official but rather is a suit against the official's office [and] is no

different from a suit against the State itself.") (citations omitted); *Papasan v.

Allain*, 478 U.S. 265, 278 (1986) ("Relief that in essence serves to compensate a

party injured in the past by an action of a state official in his official capacity that

24

was illegal under federal law is barred [by the Eleventh Amendment] even when the state official is the named defendant.").

Accordingly, claims against the State and against all State Defendants in their official capacities are DISMISSED with prejudice.

### E.   Hara Has Absolute Immunity

The State Defendants argue that Hara is entitled to absolute judicial immunity.  The court agrees.

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986)   This immunity extends "even when such acts are in excess of their jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).[8]  *See, e.g.*, *Sadoski v. Mosley*, 435 F.3d 1076, 1079 (9th Cir.

---

[8]  *Sparkman* clarified that a judge can be subject to liability for acting in the "clear absence of all jurisdiction," and distinguished that standard from acting "in excess of jurisdiction" -- where, as here, immunity applies. *See Sparkman*, 435 U.S. at 357 & n.7.  It explained:

> In [*Bradley v. Fisher*, 13 Wall. 335, 351, 20 L. Ed. 646 (1872),] the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples:  if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

(continued...)

2006) (reasoning that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority") (quoting *Stump*, 436 U.S. at 356).

Moreover, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Moore v. Brewster*, 96 F.3d 1240, 1243-44 (9th Cir. 1996), *superceded by statute on other grounds as recognized in Tia v. Mollway*, 2011 WL 2945813, at *4 (D. Haw. July 20, 2011). That is, even if judges act incorrectly or with improper motive, they are immune from suit for acts performed pursuant to their official functions. *Sparkman*, 435 U.S. at 355-56; *Pierson v. Ray*,

---

[8](...continued)
*Id.* (citing *Bradley*, 13 Wall. at 352). *Sparkman* reasoned that immunity applied because "the court over which Judge Stump presides is one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions." *Id.* at 359-60.

Here, although the Complaint alleges that "Defendant Hara did not have any jurisdiction over Plaintiff Carole Chilson as she was never before the Court," Doc. No. 1, Compl. ¶ 21, the allegation is not that he acted outside the scope of his jurisdiction, but that he committed an error in ruling on Carole Chilson's matter "in excess of his jurisdiction." *Sparkman*, 435 U.S. at 355.

386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly.").

Further, 42 U.S.C. § 1983 -- except in narrow circumstances not at issue here -- precludes prospective injunctive relief against state judges on account of their judicial acts.  Specifically, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable*.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(emphasis added).  Plaintiffs' Complaint does not allege that "a declaratory decree was violated or that declaratory relief was unavailable."  Rather, "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order [in state court]." *Agbannaoag v. Honorable Judges of Circuit Ct. of First Cir. of Haw.*, 2013 WL 5325053, at *3

(D. Haw. Sept. 20, 2013) (quoting *La Scalia v. Driscoll*, 2012 WL 1041456, at *7

(E.D.N.Y. Mar. 26, 2012)).

**F.     Section 1983 Claims Against Kubota, Oishi, and Laubach Remain[9]**

Lastly, the State Defendants argue that claims against Kubota, Oishi,

and Laubach (in their individual capacities) fail for two reasons:  First, in their

supplemental memorandum, they argue that civil rights claims against Kubota,

Oishi, and Laubach fail for lack of state action.  Doc. No. 46, Mem. at 7-10.

Second, they contend that these Defendants are entitled to absolute quasi-judicial

immunity from any liability.  Doc. No. 21-1, Mem. at 6-7.  As explained below,

however, these two arguments involve relatively complex legal theories (much of

which was not analyzed by the parties).  Ultimately, after close review, the court

requires additional information as to the specific roles that each of these

Defendants played in the state court conservatorship/guardianship action.  In short,

the issues are more appropriate for decision under summary judgment standards.

---

[9] Carroll did not move to dismiss the civil rights claims against him based on a lack of state action.  His Motion invoked only the *Rooker-Feldman* doctrine and *Younger* abstention. *See* Doc. No. 28, Carroll Mot. at 3-6.  And Merrill Lynch did not file its own Motion, seeking only (at this stage) to join in Carroll's Motion "to the extent that it seeks dismissal of any claims asserted against Merrill Lynch."  Doc. No. 36, Statement at 2.  In any event, as with the State Defendants, analyzing whether Carroll or Merrill Lynch would be subject to dismissal because they did not act "under color of state law" requires further information regarding their roles or functions in the state court proceedings.

### 1.    Section 1983 Claims

#### a.    Legal standards

To state a valid cause of action under 42 U.S.C. § 1983 for deprivation of a constitutional right, Plaintiffs must demonstrate that the deprivation occurs "under color of any statute, ordinance, regulation, custom, or usage of any State[.]" *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). That is, there must be "state action." *Id.* at 935 n.18 ("[C]onduct satisfying the state-action requirement of the Fourteenth Amendment satisfies the statutory requirement of action under color of state law [under § 1983].").  This requirement "excludes from [§ 1983's] reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks and citation omitted).  Determining whether there is state action is a "necessarily fact-bound inquiry." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).

"While generally not applicable to private parties, a § 1983 action can lie against a private party when 'he is a willful participant in joint action with the State or its agents.'" *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)).  "The Supreme Court has articulated four tests for determining whether a non-governmental person's actions

29

amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Ohno v. Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013) (citations and internal editorial marks omitted). "Most relevant here are the public function and joint action tests." *Id.* (footnote and internal quotation marks omitted). "The former treats private actors as state actors when they perform a task or exercise powers traditionally reserved to the government. The latter focuses on whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* at 995-96 (citations and internal quotation marks omitted).

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Id.* at 996 (citations and internal editorial marks omitted). "A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). But "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."

*Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting

*Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

And *Kirtley* held that a court-appointed guardian ad litem who acts

independently *and* as an advocate for the best interests of a dependent person (in

*Kirtley*, a minor child) does not act under "color of state law" for purposes of

§ 1983. 326 F.3d at 1096. The Ninth Circuit reasoned that guardians do not act

under color of law because they owe duties to the child for which they were

appointed -- "it is the independence of the guardian that insulates the role from

§ 1983 liability." *Id*. at 1093. "[T]he intended benefits of the guardian 'flow

directly to' the child, in whose interests the guardian must act." *Id.* Although the

guardian in *Kirtley* was court-appointed and paid by the state, "the guardian

functions independently of the court, exercising advocacy obligations that are, by

law, to the child, not the court." *Id.* at 1094. It reasoned that there is no close

nexus between a guardian's duties and the state (even though appointed by, paid

by, and regulated by the state) because "[w]here the guardian reports to the court,

she reports as an independent investigator [and] [w]here the guardian acts as an

advocate of the child, she occupies a role distinct from the court before which she

advocates." *Id.* at 1095. In short, *Kirtley* looked to two factors -- independence

and action as an advocate for a private party -- in concluding that a guardian does

not act under color of law.

      *b.    Application of standards*

It is premature to apply these § 1983 principles to Kubota, Oishi and Laubach.  Although all are private attorneys, they were appointed by the court to fulfill particular court functions.  The exact duties, however, that each individual Defendant fulfilled in the pending state court proceedings are unclear.  Further, the exact allegations of the pro se Complaint (which the court is obligated to construe liberally, *see, e.g.*, *Eldridge*, 832 F.2d at 1137) are difficult to discern.  The Complaint nevertheless contains enough details such that the court will require further factual information before the court can apply the appropriate legal analysis.

Kubota was appointed as a Kokua Kanawai, but the statutory and regulatory duties are broad, and encompass both independent and non-discretionary duties.  In particular, a Kokua Kanawai's duties include independently investigating, but, at the same time, not advocating on behalf of someone.  *See* Hawaii Probate Rule 113 ("A Kokua Kanawai appointed in a protective proceeding shall serve as and shall be limited to serving as an extension of the court to conduct an *independent* review of the situation[.]) (emphasis added); Official Commentary to Rule 113 ("The Kokua Kanawai is appointed to

32

serve as an extension of the court for independent review, analysis, and report.  As

such, the Kokua Kanawai *is not an advocate for or against the rights of the*

*individual and is limited in role to responding to the petition for protective*

*proceeding.  The Kokua Kanawai, without prior court order, has no authority to*

*initiate actions on behalf of the respondent*.") (emphasis added).  Answering

whether Kubota acted under color of state law for purposes of *Kirtley* will require

examining the specific role he actually played, rather that just looking to his title.

*See Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812-13 (9th Cir.

2010) ("[A]n entity may be a State actor for some purposes but not for others.").

Similarly, as to Oishi, a conservator's duties are defined by HRS

§ 560:5-421, which provides essentially that a conservator is a trustee for property

of the protected person.[10]  That is, a conservator appears to act jointly with, but

---

[10]  Section 560:5-421 provides:

> (a) The appointment of a conservator vests title in the conservator
> as trustee to all property of the protected person, or to the part
> thereof specified in the order, held at the time of appointment or
> thereafter acquired, including title to any property held for the
> protected person by custodians or attorneys-in-fact.  An order
> vesting title in the conservator to only a part of the property of the
> protected person creates a conservatorship limited to assets
> specified in the order.

> (b) Letters of conservatorship are evidence of vesting title of the
> protected person's assets in the conservator.  An order terminating
> a conservatorship transfers title to assets remaining subject to the

(continued...)

also independently from, the court.  Deciding whether *Kirtley* applies requires

some evidence of the actual duties performed by Oishi in the state court case.

Likewise, the record is unclear as to Laubach's duties.  Although the

legal duties of a guardian ad litem as set forth in HRS § 560:5-115 and Hawaii

---

[10](...continued)
conservatorship, including any described in the order, to the formerly protected person or the person's successors.

(c) Subject to the requirements of other laws governing the filing or recordation of documents of title to land or other property, letters of conservatorship and orders terminating conservatorships may be filed or recorded to give notice of title as between the conservator and the protected person.

(d) Except as limited in the appointing order, a conservator has the authority to continue, modify, or revoke any financial power of attorney previously created by the protected person.

(e) Upon notice of the appointment of a conservator, all agents acting under a previously created power of attorney by the protected person shall:
        (1) Take no further actions without the direct written authorization of the conservator;
        (2) Promptly report to the conservator as to any action taken under the power of attorney; and
        (3) Promptly account to the conservator for all actions taken under the power of attorney.

(f) Nothing in this section shall be construed to affect previously created medical decision-making authority. Any agent violating this section shall be liable to the protected person's estate for all costs incurred in attempting to obtain compliance, including, but not limited to reasonable conservator and attorney fees and costs.

Probate Rule 28[11] indicate that a guardian ad litem is appointed to represent the interests of the person for who they are appointed, the specific duties of each guardian ad litem depend upon the appointment. *See* HRS § 560:5-115 ("The court or the family court shall state on the record the duties of the guardian ad litem and its reasons for the appointment."); *cf. In re K Children*, 120 Haw. 116, 116-17, 202 P.3d 577, 577-78 (Haw. Ct. App. 2007) (exemplifying a Hawaii

---

[11]  Section 560:5-115 provides:

> At any stage of a proceeding, the court or the family court may appoint a guardian ad litem if the court or the family court determines that representation of the interest otherwise would be inadequate.  If not precluded by a conflict of interest, a guardian ad litem may be appointed to represent several individuals or interests.  The court or the family court shall state on the record the duties of the guardian ad litem and its reasons for the appointment.  Persons appointed by the court or the family court, as applicable, to serve as guardians ad litem or to perform any other duties that may be requested by the court in guardianship and protective proceedings shall be compensated in the amounts, if any, that the court deems appropriate and reasonable.  Any such compensation shall be paid from the respondent's assets or other source under the jurisdiction of the court or the family court as it shall order.

And Hawaii Probate Rule 28 provides:

> (b) Guardian Ad Litem.  The court may appoint a guardian ad litem for one or more minor, unborn, unascertained, or incompetent persons not otherwise represented in an action and may make such other order as it deems proper for the protection of a minor, unborn, unascertained, or incompetent person. The guardian ad litem shall represent the interests of the person or persons for whom the guardian ad litem is appointed.  Where the interests of different classes of unrepresented beneficiaries differ, the court may appoint a separate guardian ad litem to represent each class of interests.

family court order appointing a guardian ad litem that sets forth detailed duties on the reverse of the Order). And the record only contains a state court order appointing Laubach that does not indicate her duties. *See* Doc. No. 46-4, State Defs.' Ex. C at 1 (January 13, 2015 Order of Judge Hara stating only that "[t]he Court Hereby Terminates John [Carroll], Esq. as temporary guardian ad litem and appoints Kanani Laubach, Esq. at Guardian Ad Litem for Carole Chilson"). Compare this to the confusing allegations of the Complaint that "Defendant Laubach was appointed to address Plaintiff Carole Chilson's motion to vacate the illegal order issued by Defendant Hara in appointing a conservator in which Plaintiff Carole Chilson's constitutional rights have been violated and that court lacked jurisdiction over Plaintiff Carole Chilson." Doc. No. 1, Compl. ¶ 9. Thus, as with Kubota and Oishi, deciding whether *Kirtley* applies to Laubach requires additional information as to the actual duties performed by Laubach in the state court case.

### 2. *Quasi-Judicial Immunity*

As with the state action inquiry, determining whether Kubota, Oishi, and Laubach are entitled to quasi-judicial immunity requires additional information. Although absolute judicial immunity applies to Hara, ascertaining whether absolute quasi-judicial immunity applies to those that he appointed

requires a further analysis.  *See Burton v. Infinity Capital Mgmt.*, 753 F.3d 954, 960 (9th Cir. 2014) ("[W]e take a functional approach to determining whether a nonjudicial officer is entitled to absolute quasi-judicial immunity by looking to 'the nature of the function performed and not to the identity of the actor performing it.'") (quoting *In re Castillo*, 297 F.3d 940, 948 (9th Cir. 2002)).

a.      *Standards for quasi-judicial immunity*

"Absolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions."  *Id.* at 959 (quoting *Castillo*, 297 F.3d at 947) (internal quotation marks omitted).  "To qualify for absolute immunity, the function performed must be a judicial act with 'a sufficiently close nexus to the adjudicative process.'"  *Id.* at 960 (quoting *Castillo*, 297 F.3d at 948).  "However, 'it is only when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer.'"  *Id.* (quoting *Castillo*, 297 F.3d at 949).  To be protected, the function performed must "involve the exercise of discretion in resolving disputes."  *Castillo*, 297 F.3d at 948 (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993)).

For example, bankruptcy trustees have quasi-judicial immunity while performing acts closely related to the judicial process, such as scheduling and

37

noticing bankruptcy hearings.  *Id*. at 952-53.  Such tasks are an integral part of

judicial process.  *See also Balser v. Dep't of Justice*, 327 F.3d 903, 910 (9th Cir.

2003) (holding that United States Trustees have quasi-judicial immunity).  And

"parole board members . . . are entitled to absolute quasi-judicial immunity for

decisions to grant, deny or revoke parole because these tasks are functionally

comparable to tasks performed by judges." *Swift v. California*, 384 F.3d 1184,

1189 (9th Cir. 2004) (citations and internal quotation marks omitted).  But "parole

officials are not entitled to absolute immunity for conduct not requiring the

exercise of quasi-judicial discretion." *Id*. (quoting *Anderson v. Boyd*, 714 F.2d

906, 909 (9th Cir. 1983)).  "There is no reason to clothe actions taken outside an

official's adjudicatory role with the absolute immunity tailored to the demands of

that role." *Id*.  "Thus, while parole officials 'may claim absolute immunity for

those actions relating to their responsibility to determine whether to revoke parole,

their immunity for conduct arising from their duty to supervise parolees is

qualified.'" *Id*. (quoting *Anderson*, 714 F.2d at 910).

Likewise, *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en

banc) recognized that "[o]fficials performing the duties of advocate or judge may

enjoy absolute immunity for some functions traditionally performed at common

law, but that protection does not extend to many of their other functions." *Id.*

(citation omitted).  For example, "[*Meyers v. Contra Costa County Department of Social Services*, 812 F.2d 1154 (9th Cir. 1987),] recognized absolute immunity for social workers [(acting as officers of the court)] only for the discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents."  *Miller*, 335 F.3d at 898 (citing *Meyers*, 812 F.2d at 1157).  But such social workers might not be absolutely immune "for investigating whether a removal petition should be filed."  *Id*. (citation omitted).

"To the extent . . . that social workers also make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available."  *Id*. at 898.  "[T]he scope of absolute immunity for social workers is extremely narrow."  *Id.* (citation omitted).  *See Beltran v. Santa Clara Cty.*, 514 F.3d 906, 908-08 (9th Cir. 2008) (concluding that absolute immunity does not apply to social workers' 'investigatory conduct'").  "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties."  *Miller*, 335 F.3d at 897 (quoting *Antoine*, 508 U.S. at 433 n.4).

   *b.    Application of standards*

The court is obligated to examine the precise functions performed, not the titles or labels of each Defendant.  "The burden is on the official claiming

absolute immunity to identify the . . . function that the official asserts is shielded by absolute immunity." *Miller*, 335 F.3d at 897 (citation omitted).

The record is insufficient for the court to analyze the absolute quasi-judicial standards here. As set forth above, the statutory duties for a Kokua Kanawai, conservator, and guardian ad litem under Hawaii law appear to allow much judicial-type discretion, but also include duties that are investigatory and administrative. The analysis is not simple. *See, e.g.*, *Gross v. Rell*, 585 F.3d 72, 91 (2d Cir. 2009) (facing question of quasi-judicial immunity of court-appointed conservatory, and finding it necessary to certify a question of state law to Connecticut Supreme Court because "the statutes and case law in Connecticut do not sufficiently enable us to analyze the factors . . . in deciding when an individual is entitled to quasi-judicial immunity"). And it is unclear what role each individual actually performed (or is alleged to have performed) in the state court proceedings. In short, given the confusing nature of the allegations of this particular Complaint, ascertaining whether Kubota, Oishi, and Laubach are entitled to absolute quasi-judicial immunity is more appropriate in this instance for a motion for summary judgment.

Accordingly, the Motion to Dismiss as to Kubota, Oishi, and Laubach is DENIED without prejudice to issues being raised in a motion for summary

judgment with a record explaining their roles in the state court proceedings.

## V.  CONCLUSION

The Motions to Dismiss are GRANTED in part and DENIED in part, without prejudice for remaining issues and/or claims to be raised at a summary judgment stage.  To summarize:

Claims under 42 U.S.C. § 1981, 1985, and 1986 are dismissed without prejudice.  Plaintiffs may, if there is a good faith basis in fact, file an Amended Complaint attempting to state such claims.  If no such Amended Complaint is filed by **January 7, 2016**, the action will continue based on the original Complaint.

Claims against Hara are dismissed with prejudice based on absolute judicial immunity.  If an Amended Complaint is filed, Plaintiffs may not file any new claims against Hara.

Claims for damages as to the State and any Defendants in their official capacities are dismissed with prejudice based on Eleventh Amendment immunity.  If an Amended Complaint is filed, Plaintiffs may not file any new claims for damages against the State or any Defendant in their official capacity.

Claims under 42 U.S.C. § 1983 against Kubota, Oishi, Laubach, and Carroll (in their individual capacities), as well as against Merrill Lynch, remain in

the action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 10, 2015.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Yellen et al. v. Hara et al.*, Civ. No. 15-00300 JMS-KSC, Order Granting in Part and Denying in Part Motions to Dismiss